Forest Hills Borough Appeal.

Argued October 9, 1962. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and KEIM, JJ.

*Warren S. Reding,* with him *Walter J. Phillips,* and *Reding, Blackstone & Sell,* for appellant.

*Frank Reich,* with him *Abraham Fishkin,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, January 8, 1963:

The Borough of Forest Hills appeals from an Order of the County Court of Allegheny County which over-ruled the decision of the Board of Adjustment and granted a variance. The Court took additional testimony and therefore the question before this Court is whether there is adequate evidence to support the findings of the Court below and whether there has been a clear abuse of discretion or an error of law: *Garbev*

*Zoning Case,* 385 Pa. 328, 122 A. 2d 682; *Archbishop O'Hara's Appeal,* 389 Pa. 35, 131 A. 2d 587; *Ferry v. Kownacki,* 396 Pa. 283, 152 A. 2d 456.

William Reich, one of the appellees, is the owner of a lot in that Borough, situate on the east side of a heavily travelled road called Ardmore Boulevard approximately midway in the block between Newport Road and Elmore Road. In October of 1960 Reich entered into an agreement with Dance Oil Service Company, the other appellee, for the sale of this property, contingent upon the obtaining of a variance for a gasoline service station with accessory facilities on said premises. Part of the property, namely, somewhat over half of this land is zoned "(A) Residence, Z-2 District." In this district permissive uses are one-family dwellings, churches, schools, libraries and accessory uses. However, a fifth of the property lies in the district zoned as "Commercial District Z-1", which includes numerous commercial establishments as well as a number of residences.

The subject premises have a frontage on Ardmore Boulevard of 395.69 feet and a depth of 155 feet to Leon Way, a road running roughly parallel with Ardmore Boulevard. Leon Way is in reality an alley paved only with cinders. Such paving commences at Newport Road and ends approximately 200 feet within the lines of the Reich property. The usable depth of the property (described by the Court below as "uncontrolled fill") is on a plateau level with Ardmore Boulevard which extends eastwardly 70 to 75 feet. At the rear of such plateau there is a sharp fall-off at an angle of about 45 degrees to a level approximately 30 to 35 feet below the grade of Ardmore Boulevard. At this level there is a creek known as Fall Run. Roughly parallel to the meandering course of Fall Run there is a 30 inch water line running approximately from the northeast corner to the southeast corner of the Reich

property. This belongs to and is used by the Wilkins-burg-Penn Joint Water Authority. According to the evidence, the Authority is unwilling to have this pipe either covered or moved. Moreover, on the property are two storm sewer lines crossing the property at right angles to Ardmore Boulevard. These are open galvanized pipes having diameters of approximately 18 inches, which empty into Fall Run. The "fill" for the plateau along the easterly side of Ardmore Boulevard was placed there approximately 5 years ago.

The evidence in the case fully warranted the conclusion of the Court below that for the above mentioned and other reasons the "residential" portion of the Reich property cannot be *used* for single family residences. Furthermore, a setback ordinance prevents an owner from building within the first 30 feet of the front line of the property. There was evidence that a one-family dwelling would occupy another 25 or 30 feet of depth. If the property is left the way it now is, there would be practically no available space between the rear of any future dwelling and the sharp declivity at the easterly edge of the present plateau along the easterly side of Ardmore Boulevard. Also, the declivity at the rear of the property and the Fall Run Gulley make the property not only an eyesore, but very dangerous for any owner who has young children.

There was expert testimony (1) that it would be vain to hope to obtain F.H.A. or V.A. financing for residences built on ground so recently filled, and any such buildings would require pilings or caissons at tremendous expense; (2) that filling in the eastern part of the property would be almost impossible because of the water pipe and storm sewers above referred to and because of Fall Run, but that if the easterly portion of the lot were filled in so as to be level with the westerly part, the cost of such fill would be approximately $80,000.00.

The evidence clearly supports the findings of the Court below that this property cannot be used for the erection of one-family dwellings, which is the sole permissible use under the zoning regulations. It is crystal clear that the owner has proved unnecessary hardship which is peculiar and unique to this property. For all practical purposes the owner has been deprived of the lawful use of his property by an ordinance which in its application to this property is arbitrary, unreasonable, discriminatory and confiscatory, and therefore unconstitutional: *Garbev Zoning Case,* 385 Pa., supra.

Order affirmed.